IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAUREN DEWALT, *Plaintiff,* | : : : | CIVIL ACTION |
| v. | : : | |
| ALLIANCE PHARMA INC., *Defendant* | : : : | NO. 21-1064 |

## MEMORANDUM

PRATTER, J.                                                                                                     SEPTEMBER 14, 2022

Lauren Dewalt quit her job after her boss denied her a raise. The raise would have been her third within 10 months. Ms. Dewalt asserts that her former employer, Alliance Pharma Inc., denied her the raise because she was a mother with young children, in violation of Title VII. Alliance now moves for summary judgment, arguing that Ms. Dewalt has failed to adduce sufficient evidence to state a *prima facie* claim for Title VII gender discrimination, and even if she had adduced such evidence, she has failed to prove that Alliance's non-discriminatory reason for denying her a raise was pretextual. Ms. Dewalt has produced negligible evidence of discrimination. Her suit boils down to the assertion that the denial of a raise was not fair. But Title VII does not forbid unfair employment practices, just discriminatory employment practices. For the reasons that follow, the Court grants Alliance's motion for summary judgment.

### BACKGROUND

On November 26, 2018, Lauren Dewalt began working as a sample coordinator for Alliance Pharma Inc., which provides business services related to pharmaceutical clinical trials. In her initial position, Ms. Dewalt oversaw the receipt, inventorying, storing, and disposal of samples received in conjunction with different clinical trials.

1

Alliance's general practice regarding employee pay is to provide raises at employee performance reviews, which would occur following completion of six months' employment and then annually at the beginning of each calendar year. However, on at least one occasion, another sample coordinator, Anna Cucinotta, received a pay increase outside of the general performance review cycle, in March 2019.

Ms. Dewalt started with a salary of $29,000 a year. In June 2019, a little over six months after starting the position and at her first review, she received a $2,000 raise. In January 2020, she received a $3,000 raise, bringing her salary to $34,000. Since being hired, Ms. Dewalt had taken on additional responsibilities and served as a controlled substances officer, beginning in March 2019, and archivist, beginning in February 2020. Then her supervisor, Ms. Cucinotta, left Alliance, and Ms. Dewalt assumed lead responsibilities for sample management. In March 2020, two months after her second raise, Ms. Dewalt emailed Frank Li, the company's president, to request an additional raise. At that point, Ms. Dewalt served as the contact for client meetings and questions; she also trained new employees and interviewed applicants. Dr. Li responded via email that Ms. Dewalt had already received a 17% increase in salary since joining Alliance in 2018 "in consideration of [her] increased responsibilities and performance," and that the company would adjust her salary "when [the] time is appropriate." Def.'s Ex. I, Doc. No. 28-13.

Two days after Dr. Li denied Ms. Dewalt's emailed request for a pay increase, Ms. Dewalt met with Dr. Li and Stacie Shaffer, Alliance's HR Representative. She requested a $6,000 raise, which would make her annual salary $40,000. This was the same amount that Ms. Cucinotta, her supervisor, had been making immediately before departing the company. According to Ms. Dewalt, Dr. Li "laughed" at the request. Dewalt Dep. Tr. at 53:23, Doc. No. 28-6. He then said that Ms. Dewalt would receive a raise once she proved that she could handle the new job

responsibilities as head of sample management. Dr. Li, who is reportedly Chinese-American, explained that Ms. Dewalt was "a chair" and that she "had to be a table" to receive a raise. Dewalt Dep. Tr. at 53:21–24, Doc. No. 28-6. Per Ms. Shaffer, Dr. Li "tapped on the chair next to him. He said, you know, 'You're at this level. You need to come up to this level,' and then tapped on the table, referencing that she needed to show the jump in being able to carry out the responsibilities in order to receive the pay increase." Shaffer Dep. Tr. at 37:9–15, Doc. No. 28-7.

The parties dispute what happened next. Ms. Dewalt says that Dr. Li "brought up [her] children and [her] fiancé and told [her] that [she] should be grateful for what [she] had already gotten from him." Dewalt Dep. Tr. at 53:25–54:2, Doc. No. 28-6; *accord* Dewalt Dep. Tr. at 140:20–24, Doc. No. 28-5 ("[H]e said he was generous with me, he knows I have young children and that I don't necessarily deserve to be getting paid what I am at the moment."). But Ms. Dewalt cannot recall specifically if Dr. Li's statements, first, regarding her children and, second, regarding his generosity, were made together or separately. Dr. Li denied making such a comment, and Ms. Shaffer testified that Dr. Li did not mention Ms. Dewalt's children at any point.

After the meeting, Ms. Dewalt told Ms. Shaffer that she thought Dr. Li, with his chair-and-table metaphor, had "belittled and degraded" her. Shaffer Dep. at 43:8–11, Doc. No. 28-7; *accord* Dewalt Dep. at 73:18–21, Doc. No. 28-6 (testifying that Ms. Shaffer was the person who brought this up in apology). Ms. Dewalt did not mention the comment that Dr. Li had allegedly made about her children.

The next day, Ms. Dewalt emailed Ms. Shaffer to confirm that Dr. Li's statements during the meeting meant that they would discuss a raise during the performance review cycle, and, later the same day, submitted her two weeks' notice. Neither email mentioned Dr. Li's alleged comment about Ms. Dewalt's children.

3

On January 14, 2021, Ms. Dewalt filed a complaint with the EEOC and then filed this suit.

## LEGAL STANDARDS

### I. Summary Judgment Standard

For a court to grant summary judgment, the movant must prove "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To be "material," the fact must have the potential to "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute about that fact to be "genuine," there must be enough evidence such that a reasonable jury could find for the non-movant on that fact. *Id.* "When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The court does not itself "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court looks for "sufficient evidence" on which a reasonable jury could decide for the non-movant. *Id.*

"The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 248–49. Further, the non-moving party must present more than "bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

4

## II. Title VII

Title VII of the Civil Rights Act of 1964 forbids discrimination on the basis of sex. 42 U.S.C. § 2000e *et seq.* The Supreme Court has recognized the theory of "sex-plus" discrimination under Title VII. *See Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 544 (1971). In this form of sex discrimination, the employer has not discriminated against all members of one sex but has "add[ed] a criterion or factor for one sex (e.g., marital status), which is not added for the other sex." *Bryant v. Int'l Sch. Servs., Inc.*, 675 F.2d 562, 573 n.18 (3d Cir. 1982) (internal quotation marks omitted). For example, an employer who treats mothers differently than women who do not have children, or married women differently than unmarried women, has committed sex-plus discrimination, "with the 'plus' being stereotypical assumptions regarding women's [domestic or] childcare responsibilities." *Weightman v. Bank of N.Y. Mellon Corp.*, 772 F. Supp. 2d 693, 701 (W.D. Pa. Feb. 17, 2011). Still, at its core, sex-plus discrimination is "just a form of gender discrimination," *id.*, and at summary judgment, the relevant question remains whether the plaintiff has presented sufficient evidence of sex discrimination to raise a genuine issue of material fact. *Tingley-Kelley v. Trustees of Univ. of Pa.*, 677 F. Supp. 2d 764, 775 (E.D. Pa. 2010); *see also Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 43 (1st Cir. 2009).

### DISCUSSION

Ms. Dewalt claims that Alliance violated Title VII by discriminating against her because of her gender.[1] Under Title VII, an employee may establish discrimination on the basis of gender in two ways: (1) by direct evidence of discrimination; or (2) by indirect evidence under the

---

[1] Originally, Ms. Dewalt also brought claims under the Equal Pay Act, the Fair Pay Act, and the Pennsylvania Human Relations Act. The PHRA claim was dismissed via stipulation earlier in the litigation, on May 10, 2021. *See* Stipulation of Dismissal for Count III of Pl.'s Compl., Doc. No. 9. Ms. Dewalt indicated in her opposition to Alliance's motion for summary judgment that she is no longer advancing the Equal Pay Act and Fair Pay Act claims. Pl.'s Br. in Opp'n to Def.'s Br. in Supp. of Summ. J., Doc. No. 31-1, at 2.

5

*McDonnell Douglas* burden-shifting framework or the *Price Waterhouse* mixed-motive framework.[2] *Overton v. Se. Pa. Transp. Auth.*, No. 20-cv-6027, 2022 WL 1084744, at *3 (E.D. Pa. Apr. 11, 2022). Arguing a theory of sex-plus discrimination, Ms. Dewalt says that Dr. Li denied her request for a raise because she is a woman with young children (the "plus" in the context of this suit being that Ms. Dewalt has small children). To successfully usher her discrimination claim through Alliance's summary judgment challenge and to trial, Ms. Dewalt must show either through direct evidence that Alliance's decision to deny her request for a raise was discriminatory or through indirect evidence that would support a reasonable factfinder's inference of discrimination.

### I. Ms. Dewalt Has Not Identified Direct Evidence of Sex Discrimination

"Direct evidence of discrimination would be evidence which, if believed, would prove the existence of the fact [in issue] *without inference or presumption*." *Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir. 1994) (internal quotation marks omitted). The comment or action must be so "blatant" that the "intent could be nothing other than to discriminate in reaching an employment decision." *Weightman*, 772 F. Supp. 2d at 702. "Derogatory comments or stray remarks in the workplace that are unrelated to employment decisions, even when uttered by decision makers, do not constitute direct evidence of discrimination." *Tingley-Kelley*, 677 F. Supp. 2d at 776.

Ms. Dewalt asserts that Dr. Li's reference to her children—in which he "brought up [her] children and [her] fiancé and told [her] that [she] should be grateful for what [she] had already gotten from him," Dewalt Dep. Tr. at 53:24–54:2, Doc. No. 28-6—and his comparison of her to a chair during the meeting during which they discussed her raise qualify as direct evidence that he denied her the raise based on her sex.

---

[2] Here, both Ms. Dewalt and Alliance make their arguments under the *McDonnell Douglas* burden-shifting framework, so the Court does not apply the *Price Waterhouse* framework.

At first glance, these statements, though perhaps distasteful, are not blatantly discriminatory. Dr. Li did not suggest that Ms. Dewalt cannot do her job properly because she has children. *Cf. Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 115–16, 120 (2d Cir. 2004) (holding that employee had produced sufficient evidence to defeat summary judgment where supervisors told working mother that she could be a good mother or a good employee, but not both); *Tingley-Kelley*, 677 F. Supp. 2d at 777 (denying summary judgment where female applicant offered evidence she was denied admission to school because committee had concerns that she could not handle the rigorous program "given her childcare responsibilities"). Nor did Dr. Li suggest that Ms. Dewalt would be paid more if she did not have children. And referring to a woman as a "chair," while perhaps odd, does not have such blatant discriminatory connotations as to qualify as direct evidence, without a factfinder's "inference or presumption." *Torre*, 42 F.3d at 829. At most, Dr. Li's statement about Ms. Dewalt's family seems discriminatory towards parents in general, not mothers in particular, and Title VII does not prohibit discrimination merely based on being a parent.[3]

On a closer look, and construing the statement most favorably to Ms. Dewalt, the statement *could* be read as saying that Ms. Dewalt, as a woman with small children, should not be greedy and ask for even more money. That women should not be "as pushy as men in asking for raises" is a recognized gender stereotype. Laura T. Kessler, *Employment Discrimination and the Domino Effect*, 44 Fla. St. U. L. Rev. 1041, 1065 n.73 (2017); *accord* Sabrina L. Brown, *Negotiating*

---

[3] Ms. Dewalt also argues that Alliance's discharge of her fiancé two weeks after Ms. Dewalt's employment ended is further proof that Alliance "was still discriminating against [Ms. Dewalt] because she had children just as [she] had feared." Pl.'s Mot. in Opp. to Summ. J., Doc. No. 31, at 10. But sex-plus discrimination "is simply a form of gender discrimination," *Tingley-Kelley*, 677 F. Supp. 2d 764 at 775, and it is unclear how Ms. Dewalt's fiancé's firing, without further development in the summary judgment record, proves discrimination on the part of Alliance on the basis of sex, or against the protected subclass of women with small children, rather than, at most, proof of Alliance's disfavor of employing any person supporting small children.

7

*Around the Equal Pay Act*, 78 Ohio St. L.J. 471, 489–90 (2017) ("In terms of salary negotiations, a prevalent catch phrase is that 'women don't ask.' And when they do ask, women are often penalized as being too aggressive, despite the fact that men are nine times more likely than women to ask for higher compensation." (internal footnotes omitted)). So is the belief that working mothers do not deserve to be promoted or paid as much because they cannot devote their full attention to the position. *See Back*, 365 F.3d at 115–16. Arguably, Dr. Li's statement could perhaps be read to reflect stereotypes, if construed very generously.

But these two comments, in isolation, are insufficient for *reasonable* jurors to find, without inference or presumption, that Dr. Li discriminated against Ms. Dewalt based on her sex. Compare this case to *Rosencrans v. Quixote Enters., Inc.*, 755 F. App'x 139, 140 (3d Cir. 2018). There, an adult entertainment business fired a female employee the day after she got married. *Id.* Her manager told her via text that that she was fired because she had "a new husband." *Id.* at 142. At his deposition, he explained that he did so because "[i]t's not [his] job to support that girl. It is not [his] job. . . . Let [her new husband] take care of her." *Id.* The Third Circuit Court of Appeals found this comment (and its justification) to be compelling evidence of impermissible discriminatory stereotyping. *Id.* at 142–43. Here, Dr. Li's comments do not begin to approach the overtly discriminatory comments made in cases like *Rosencrans* where courts have found direct evidence of discrimination. Because the comments Ms. Dewalt cites are not so "blatant" that the "intent could be nothing other than to discriminate in reaching an employment decision," *Weightman*, 772 F. Supp. 2d at 702, she has not introduced sufficient evidence to support a direct evidence discrimination case.

8

## II. Ms. Dewalt Has Identified Insufficient Indirect Evidence of Sex Discrimination

Without direct evidence of discrimination, Ms. Dewalt must rely on indirect evidence to establish Title VII gender discrimination. "Indirect, or circumstantial, evidence of discrimination is evidence that creates an inference of discrimination." *Weightman*, 772 F. Supp. 2d at 702. A complainant relying on indirect evidence in making a Title VII claim bears the initial burden of proof by establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

In the context of a sex-plus discrimination claim, the plaintiff must first establish a *prima facie* case demonstrating: "(1) she was a woman with young children; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) similarly situated women without young children were treated more favorably, or the circumstances of [the adverse employment action] otherwise give rise to an inference of discrimination." *Weightman*, 772 F. Supp. 2d at 703. "[T]here is a low bar for establishing a *prima facie* case of employment discrimination." *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006).

Second, under the *McDonnell Douglas* burden-shifting framework, the defendant must articulate a legitimate and nondiscriminatory reason for causing the plaintiff to experience an adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802. An employer can satisfy its "relatively light" burden of production by introducing some evidence that would permit a conclusion that there was a nondiscriminatory reason for its unfavorable employment decision. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Moreover, the employer does not need to prove that its proffered reason was the actual motivation for its adverse employment decision, because the plaintiff always bears the ultimate burden of proof in intentional discrimination cases. *Id.*

Third, if the defendant successfully establishes a nondiscriminatory reason, the burden shifts once again to the plaintiff to submit evidence:

> from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

*Id.* at 764. "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons . . . was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Id.* Furthermore, the employee cannot only adduce evidence showing that the employer's decision was "wrong or mistaken," but instead, under the first prong of the *Fuentes* pretext analysis, the employee must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* reasonably find them" unbelievable. *Id.* at 765; *see also Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (*en banc*) ("In simpler terms, [the plaintiff] must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason."). If a plaintiff wishes to establish pretext under the second prong of the *Fuentes* pretext analysis, she must cite evidence proving discrimination "based solely on the natural probative force of the evidence." *Keller*, 130 F.3d at 1111. The difficult task of the plaintiff in proving discrimination under this framework "arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir.1992).

10

Ms. Dewalt does not surmount this difficult task. She cannot make out a *prima facie* case, much less prove that Alliance's articulated non-discriminatory reason is merely pretext for sex discrimination.

### A. Ms. Dewalt Has Not Made Out a *Prima Facie* Case of Discrimination

For her *prima facie* case of sex-plus discrimination, Ms. Dewalt must show that (1) she belongs to a protected subclass, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) "similarly situated women without young children were treated more favorably, or the circumstances of [the adverse employment action] otherwise give rise to an inference of discrimination." *Weightman*, 772 F. Supp. 2d at 703. Ms. Dewalt has put forth evidence of the first three requirements: She belongs to the protected sex-plus subclass of women with small children. *Id.* Alliance does not dispute that Ms. Dewalt was qualified for the position. And she was denied a raise, which constitutes an adverse employment action. *Zurchin v. Ambridge Area Sch. Dist.*, 300 F. Supp. 3d 681, 689 (W.D. Pa. 2018). But she has failed to show how similarly situated women without young children were treated more favorably.

To meet this fourth prong of her *prima facie* case, Ms. Dewalt avers that Ms. Cucinotta, her former supervisor and, she argues, a similarly situated individual, was treated more favorably than Ms. Dewalt because she did not have young children. Ms. Dewalt points out that none of the other sample coordinators had children. But they were not treated differently from Ms. Dewalt. They all started at the same salary as Ms. Dewalt and received lower or comparable raises while at Alliance. The sole person who had a higher salary than Ms. Dewalt was Anna Cucinotta, the lead sample coordinator who left partway through Ms. Dewalt's employment. Individuals "similarly situated" to a plaintiff "must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's

11

treatment of them for it." *Bullock v. Children's Hosp. of Philadelphia*, 71 F. Supp. 2d 482, 489 (E.D. Pa. 1999). Ms. Cucinotta worked at Alliance for four years, from June 2016 to February 2020. Her starting salary was $29,000, the same as Ms. Dewalt. Ms. Cucinotta underwent five pay increase cycles at Alliance, bringing her final salary to $40,000. Ms. Cucinotta, like Ms. Dewalt, began taking on additional job responsibilities, including those of sample manager. Following her initial raise upon six months of employment, and her second raise 12 months thereafter, Ms. Cucinotta had an annual salary of $32,500, whereas Ms. Dewalt received an annual salary of $34,000 after completion of her first two review cycles and accompanying raises. Ms. Cucinotta did not receive a raise specific to her increased sample management responsibilities until she was formally appointed to lead the sample management department. And, Alliance argues, given the fact that Ms. Cucinotta had worked at Alliance twice as long as Ms. Dewalt at the time of their respective departures, the two women are not similarly situated individuals. The Court agrees that Ms. Cucinotta's longer tenure and resulting professional experience is a sufficient "differentiating or mitigating circumstance[]" that reasonably explains Alliance's differing treatment of Ms. Dewalt. *Bullock*, 71 F. Supp. 2d at 489.

Ms. Dewalt also refers back to Dr. Li's statements in the meeting regarding her young children and the comparison of Ms. Dewalt to a "chair" as circumstantial evidence giving rise to an inference of discrimination. Even generously read, Dr. Li's alleged reference to Ms. Dewalt's children is weak and exceedingly vague evidence of sex discrimination. And the comparison to a "chair," though strange, does not have any inherent gender connotations that could lead reasonable juries to infer discriminatory intent. Noting that Dr. Li is Chinese-American, Ms. Dewalt failed to show any evidence indicating that there are offensive idioms in the Chinese culture relating to chairs or tables that would be revelatory as to the use of the metaphor or lead to a reasonable

inference of Dr. Li's gender discrimination against her. Indeed, the only explanation Ms. Dewalt proffers for feeling upset at Dr. Li's chair remark is that "it compares a human being to a chair and table" and "a chair is something you sit on." Apr. 25 Summ. J. Arg. Tr. at 14:18–20.

Even construing all the evidence in the light most favorable to Ms. Dewalt, the circumstances do not suggest that Dr. Li denied Ms. Dewalt the raise because she is a mother of young children. Ms. Dewalt's *prima facie* case has no legs to stand on.

### B. Ms. Dewalt Has Not Introduced Evidence to Show That Alliance's Proffered Reason Is Merely Pretext for Discrimination

Even if Ms. Dewalt had made out a *prima facie* case of discrimination, she has not introduced evidence from which reasonable jurors could conclude that Alliance's stated reason for denying the raise is pretextual. Alliance asserts now, as Dr. Li did in his email prior to the meeting to discuss the raise and in the meeting itself, that Ms. Dewalt would not receive another raise because she had just received two raises in the past year and she needed more time to show herself capable of her new job responsibilities.

Ms. Dewalt attempts to show pretext and differentiate Alliance's treatment of Ms. Cucinotta by arguing that Ms. Dewalt had been formally appointed to lead sample management, but she did not receive a raise with this formal appointment, as Ms. Cucinotta did. Plus, Ms. Dewalt argues that she had been performing these extra job responsibilities for months in a transition-like period while Ms. Cucinotta was preparing to leave Alliance, proving to Dr. Li that she could handle the job. To her, that shows that Dr. Li was wrong. But employers do not have to be "wise, shrewd, prudent, or competent," so long as they do not discriminate. *Fuentes*, 32 F.3d at 765. Even if Dr. Li was "wrong or mistaken" about Ms. Dewalt needing more time to prove herself, that potential error in business judgment does not mean that his non-discriminatory explanation as to why he denied Ms. Dewalt's raise is so "weak[]" or "implausibl[e]" so as to be disregarded. *Id.* at 765.

13

Ms. Dewalt has failed to cite sufficient evidence in the summary judgment record from which reasonable jurors could discredit Alliance's articulated nondiscriminatory reasons or believe that an invidious discriminatory reason motivated Dr. Li's rejection of Ms. Dewalt's raise request. *Fuentes*, 32 F.3d at 764.

## CONCLUSION

In sum, Ms. Dewalt has not furnished enough credible evidence that her employer denied her request for a raise based on her sex. The Court grants Alliance's motion for summary judgment in full. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE